**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SYMPHONY HEALTH SOLUTIONS CORPORATION, SOURCE HEALTHCARE ANALYTICS LLC, and IMPACTRX, INC., | : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : Civil Action No. 13-4290 <br> : |
| v. | : Hon. Jan E. DuBois <br> : <br> : |
| IMS HEALTH INCORPORATED, | : <br> : |
| Defendant. | : <br> : |

**IMS HEALTH INCORPORATED'S MEMORANDUM OF LAW IN
OPPOSITION TO SYMPHONY'S MOTION TO DISMISS THE AMENDED
COUNTERCLAIMS OF IMS HEALTH INCORPORATED**

# TABLE OF CONTENTS

**Page**

I.   FACTS ..................................................................................................................... 2

    A.   Through Investment And Innovation, IMS Health Builds The Products Its Clients Demand. .......................................................................................................... 2

    B.   Symphony Freeloads Off Of IMS Health. ................................................... 3

        1.   Symphony's Scheme Starts With Poaching Steve Stevens, Architect Of IMS Health's De-Identification Engine. ................................................. 4

        2.   Symphony Continues Its Scheme With A Focus On Reconstructing IMS Health's De-Identification/EMR Team. ............................................. 5

        3.   Symphony Continues To Execute Its Scheme, Undeterred By This Litigation. ...................................................................................... 7

    C.   IMS Health Asserts Amended Counterclaims. ............................................. 9

II.   LEGAL STANDARD ............................................................................................ 9

III.   ARGUMENT ...................................................................................................... 10

    A.   This Court Has Jurisdiction Over The Amended Counterclaims. .............. 10

    B.   IMS Health Has Pled Actionable Claims For Tortious Interference With Contractual Relations. ................................................................................ 13

        1.   Symphony Cannot Use The Shield Of The Competitor's Privilege Because Symphony Employed Wrongful Means To Interfere With Existing Restrictive Covenants. .............................................................. 14

        2.   Symphony Has Improperly Interfered With IMS Health's Relationship with the De-Identification Vendor and has Caused IMS Health Injury. ........................ 18

    C.   IMS Health Has Pled Claims For Improper Procurement Of Confidential Information And Unfair Competition. ......................................................... 20

        1.   IMS Health Has Pled A Claim For Improper Procurement of Confidential Information. ................................................................................ 20

        2.   IMS Health Has Pled A Claim Of Unfair Competition. ..................... 21

    D.   The Fievitz And Schlesinger Claims Are Not Barred By Res Judicata. ..... 23

    E.   If The Court Finds Any Of The Counterclaims Insufficiently Pled, IMS Health Should Be Granted Leave To Amend. .................................................... 25

IV.   CONCLUSION .................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abromavage v. United Mine Workers of Amer., 726 F.2d 972 (3d Cir. 1984) ...........................11

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199 (3d Cir. 2009).........................16

Adefumi v. City of Philadelphia, 445 Fed. App'x 610 (3d Cir. 1994) .......................................24

Alpern v. Cavarocchi, No. 98-3105, 1999 U.S. Dist. LEXIS 5929 (E.D. Pa. Apr. 29, 1999) ......................................................................................................................................11

Ashcroft v. Iqbal, 556 U.S. 662 (2009)........................................................................................9

Assembly Tech. Inc. v. Samsung Techwin Co., Ltd., No. 09-798, 2009 U.S. Dist. LEXIS 106934 (E.D. Pa. Nov. 16, 2009).......................................................................17, 18, 19, 25

Assembly Tech. Inc. v. Samsung Techwin Co., Ltd, 695 F. Supp. 2d 168 (E.D. Pa. 2010) ...16, 18

Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474 (E.D. Pa. 2009) .........10

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..................................................................9, 10

BP Envtl. Servs., Inc. v. Republic Servs. Inc., No. 12-4103, 2013 U.S. Dist. LEXIS 71536 (E.D. Pa. May 21, 2013) ..................................................................................................14

Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1118 (N.D. Cal. 2003) ..............................12

Cronin v. Citifinancial Servs., 352 Fed. App'x 630 (3d Cir. 2009)...............................................11

Den-Tal-EZ, Inc. v. Siemens Capital Corp., 566 A.2d 1214 (Pa. Super. Ct. 1989) .....................20

Eagle v. Morgan, No. 11-4303, 2013 U.S. Dist. LEXIS 34220 (E.D. Pa. Mar. 12, 2013)............23

Fishkin v. Susquehanna Partners, G.P., No. 03-3766, 2007 U.S. Dist. LEXIS 19621 (E.D. Pa. Mar. 20, 2007)..........................................................................................................19

Fleisher v. Standard Ins. Co., 679 F.3d 116 (3d Cir. 2012)........................................................9

Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631 (3d Cir. 1961)........................12

Grier v. Klem, 591 F.3d 672 (3d Cir. 2010) ................................................................................9

HB Gen. Corp. v. Manchester Partners, 95 F.3d 1185 (3d Cir. 1996).........................................11

Hennessy v. Santiago, 708 A.2d 1269 (Pa. Super. 1998) ..............................................................16

Hill v. Best Medical International, Inc., No. 01-1709, 2011 U.S. Dist. LEXIS 123845
(W.D. Pa. Oct. 24, 2011) .......................................................................................23

ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d 622 (E.D. Pa. 2003)...........21

Independence Tube Corp. v. Copperweld Corp., 74 F.R.D. 462 (N.D. Ill. 1977)..................12, 13

Jones v. Holvey, 29 F.3d 828 (3d Cir. 1994) ...............................................................24

Judge Tech. Servs. v. Clancy, 813 A.2d 879 (Pa. Super. 2002) .........................................16

Kisano Trade & Invest Ltd. v. DEV Lemster, No. 11-852, 2011 U.S. Dist. LEXIS 133089
(W.D. Pa. Sept. 27, 2011) .....................................................................................19

Lakeview Ambulance and Med. Servs., Inc. v. Gold Cross Ambulance and Med. Serv.,
Inc., No. 1994-2166, 1995 Pa. Dist. & Cnty. Dec. LEXIS 279 (Pa. Ct. Com. Pl. Oct.
19, 1995) ...........................................................................................................21

Marmon Coal Co. v. Eckman, 726 F.3d 387 (3d Cir. 2013) ............................................24

Morgan's Home Equip. Corp. v. Martucci, 136 A.2d 838, 847-48 (Pa. 1957) ...........................23

Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96 (3d Cir. 1988) ..............................12

Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co., No. 09-236, 2009 U.S. Dist.
LEXIS 113209 (W.D. Pa. Dec. 4, 2009) .................................................................21

Pestco, Inc. v. Associated Prods., Inc., 880 A.2d 700 (Pa. Super. Ct. 2005)...............................21

Phillips v. Cnty. of Allegheny, 515 F.3d 224 (3d Cir. 2008)....................................9, 10, 25

Pierre & Carlo, Inc. v. Premier Salons, Inc., 713 F. Supp. 2d 471 (E.D. Pa. 2010) ...................17

Potenza v. City of New York DOT, No. 03 CV 2430, 2008 U.S. Dist. LEXIS 8793
(E.D.N.Y. Feb. 6, 2008).........................................................................................4

Reading Radio, Inc. v. Fink, 833 A.2d 199 (Pa. Super. Ct. 2003)....................................16, 17, 18

Rodziewicz v. Beyer, 809 F. Supp. 1164 (D.N.J. 1992).................................................24

Rohm and Haas Co. v. Adco Chem. Co., 689 F.2d 424 (3d Cir. 1982) ..............................20

Schomburg v. Dow Jones & Co., 504 Fed. App'x 100 (3d Cir. 2012)........................................25

Sciortino v. Johnson, No. 04-6158, 2007 Pa. Dist. & Cnty. Dec. LEXIS 185 (Pa. Com. Pl.
May 21, 2007)......................................................................................................17

Shellenberger v. UPS, No. 05-2266, 2006 U.S. Dist. LEXIS 2636 (E.D. Pa. Jan. 25,
2006) ................................................................................................................24

Steak Umm Co., LLC v. Steak 'Em Up, Inc., No. 09-2857, 2009 U.S. Dist. LEXIS 101357 (E.D. Pa. Oct. 30, 2009) ..........................................................................4

United Mine Workers v. Gibbs, 383 U.S. 715 (1966) ...................................................11

Walker v. THI of N.M. at Hobbs Ctr., 803 F. Supp. 2d 1287 (D.N.M. 2011) ..............11

Zimmer Spine, Inc. v. EBI, LLC, No. 10-3112, 2011 U.S. Dist. LEXIS 103629 (D. Colo. Sept. 14, 2011) ....................................................................................................18

**STATUTES**

28 U.S.C. § 1367 ................................................................................................10, 11

**RULES**

Federal Rule of Civil Procedure 8(a)(2) .......................................................................9

Federal Rule of Civil Procedure 12(b)(6) .....................................................................9

Federal Rule of Civil Procedure 13 ............................................................................11

Federal Rule of Civil Procedure 15(a)(2) ...................................................................25

Federal Rule of Evidence 408 ......................................................................................4

**OTHER AUTHORITIES**

6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1474 (3d ed. 2008) ...................................................................................................................26

Fundamentals of Antitrust Law § 3.04d (4th ed. 2011) ..............................................12

Restatement (Second) of Torts ("Section 768") .........................................................15

Restatement (Second) of Torts Section 768, cmt. (i) .................................................15

Restatement (Second) of Torts § 766 and .................................................................19

Restatement (Second) of Torts § 768 ...................................................................15, 17

Restatement (Second) of Torts § 768(1)(b) ................................................................16

Restatement (Third) of Unfair Competition § 1 cmt. (g) .......................................22, 23

Restatement (Third) of Unfair Competition § 1 & cmt. (g) .........................................22

Restatement of Torts § 759 .........................................................................................21

In this lawsuit, Symphony[1] – part of a multi-billion dollar private equity investment firm – tries to blame its limited business success on IMS Health Inc. ("IMS Health"). But, as its actions make plain, Symphony is no victim. While IMS Health has earned its market position through investment and innovation, Symphony has continually resorted to lying, cheating, and stealing in order to counter IMS Health's high quality products and services.

As IMS Health alleges in its Amended Counterclaims,[2] Symphony has engaged in a pattern of tortious conduct aimed at stealing IMS Health's confidential information and gaining an unfair competitive advantage. Symphony's tactics have included (1) poaching IMS Health employees in violation of their contract covenants with IMS Health and encouraging them to disclose IMS Health's confidential information – information that is at the core of IMS Health's service, technology, and product offerings, (2) luring away IMS Health employees for the purpose of soliciting IMS Health clients, in violation of the employees' contract covenants, and (3) hiring a vendor with intimate knowledge of IMS Health's proprietary technology in order to have that vendor build *the same technology* for Symphony.

Symphony would prefer that the Court ignore all of that. It has filed a motion to dismiss IMS Health's Amended Counterclaims, hoping to confine the Court (and a jury) to its slanted, one-sided version of how it competes with IMS Health and to silence the real story. Symphony's motion is baseless. As IMS Health's counterclaims reveal, Symphony has not been

---

[1] Throughout this brief, IMS Health will use "Symphony" to refer collectively to Symphony Health Solutions Corporation, Source Healthcare Analytics LLC, and Impact RX, Inc.

[2] Symphony contends that, by amending its counterclaims, IMS Health has conceded that the original counterclaims somehow lacked merit. Symphony is wrong. IMS Health did not amend its counterclaims because they were insufficient. IMS Health amended its counterclaims because Symphony has continued to engage in wrongful conduct during the course of this lawsuit. At the same time Symphony was drafting its original motion to dismiss, Symphony was actively working to steal IMS Health's confidential information, palm it off as its own, and steal IMS Health's customers by encouraging former IMS employees to breach their restrictive covenants. See Amended Counterclaims ¶¶ 58-59.

hamstrung by anything IMS Health has done.  Symphony has simply refused to compete fairly.

The facts that make this plain not only support IMS Health's defenses to Symphony's antitrust

and other claims, they also give rise to the nine counterclaims brought against Symphony:

misappropriation of trade secrets (Count I); improper procurement of confidential information

(Count II); tortious interference with contractual relations (Counts III-VIII); and unfair

competition (Count IX).  The motion to dismiss should be denied.

I.      FACTS

   A.      Through Investment And Innovation, Ims Health Builds The Products Its
           Clients Demand.

          Founded in 1954, IMS Health is an information, services, and technology

company with a mission of making health care perform better.  <u>See</u> Answer at preamble;

Amended Counterclaims ("ACC") at ¶ 1.  IMS Health partners with a broad array of clients,

including pharmaceutical, medical device and consumer health manufacturers, and distributors,

providers, payers, government agencies, policymakers, researches, and the financial community.

ACC ¶ 1.  IMS Health provides to its clients evidence-based data and analyses to generate

improved customer outcomes.  <u>Id.</u>  For nearly sixty years, IMS Health has been a leader in its

field, working hard and making significant investments to develop the technologies and products

(both organically and through acquisitions) demanded by its client base.  <u>Id.</u> at 1-2.

          By way of example, IMS Health's clients are demanding more integrated and

longitudinal information regarding anonymous healthcare patients – information that can give a

more fulsome picture of these anonymous patients, including the use of medical services and

prescription drugs over time.  This is called anonymized patient longitudinal data ("APLD").

ACC ¶¶ 6, 18.  There is significant value in this information since it can illuminate the factors

that affect whether patients using a particular prescription drug will be compliant with the

regimen prescribed by their physicians, whether the patients will also use complementary drugs, or whether the patients will switch to competing drugs.  Id.  Through its 2011 acquisition of SDI Health LLC and its own previous and subsequent organic development, IMS Health has created innovative product offerings to meet this need.  Id. at ¶ 19.  IMS Health offers its clients products that track anonymous patient behavior across time and across different data sources, like retail pharmacy records and electronic medical records  ("EMR") from physicians.  Id.  These products use highly confidential and proprietary de-identification techniques, software, and patient linking methodologies to anonymize each patient while still connecting all of the data associated with a particular patient.  IMS Health continues to develop the technology that supports its APLD products, most recently focusing on increasing the capability to process and integrate EMR data.

As described below, rather than doing this on its own, Symphony has made these valuable assets a primary target, employing a scheme to pilfer this protected information from former IMS Health employees and a current IMS Health vendor.

## B.    Symphony Freeloads Off Of Ims Health.

Like IMS Health, Symphony also is an information, services, and technology company that services the healthcare industry.  Symphony is a direct competitor to IMS Health in the United States for certain of IMS Health's products and services.  Unlike IMS Health, Symphony has not forged its path through 60 years of innovation and investment.  Symphony was born in 2012 out of a series of purchases and mergers made by the private equity firm Symphony Technology Group ("STG"), which is controlled by technology billionaire Romesh Wadhwani.  ACC ¶ 3.  To form Symphony, STG combined two of its portfolio companies, Source Healthcare Analytics ("Source") and ImpactRx (which had just previously acquired TargetRx and AlphaDetail).  Id. at ¶¶ 3, 21-22.  Eschewing the hard work and investment required to respond to and anticipate client needs, Symphony has instead adopted a parasitic

approach to business:  stealing key people, technology, information, and clients from IMS Health

in violation of numerous contract covenants.

 1. **Symphony's Scheme Starts With Poaching Steve Stevens, Architect Of IMS Health's De-Identification Engine.**

 Symphony's primary targets include the de-identification and EMR technology

used by IMS Health in its APLD products.  To gain access to these crucial pieces of IMS

Health's proprietary technology, Symphony first poached IMS Health employee Steve Stevens,

an architect of the IMS Health de-identification engine and the IMS Health employee who was

leading the EMR data team.  ACC ¶¶ 24-27.  Symphony clandestinely recruited Stevens,

convincing him to leave IMS Health in December 2012 for a position with Symphony that

involved working on de-identification technology projects.  Id. at ¶ 39.[3]  Knowing its conduct

was improper, and would lead Stevens to disclose IMS Health's trade secrets and/or confidential

information and violate the covenants of his employment agreement with IMS Health,

Symphony induced Stevens to lie to IMS Health.  Id. at ¶¶ 27-36.  When Stevens resigned from

IMS Health, he refused to identify his new employer, but expressly denied that he was going to

join a competitor.  When IMS Health learned that Stevens had joined Symphony, IMS Health

confronted Symphony and requested that Stevens be restricted from participating in projects

involving de-identification technology due to his unique knowledge of IMS Health's proprietary

information and the inevitable use and disclosure of that information.  Id. at ¶¶ 37-39.

---

[3] Symphony has moved to strike the allegations of Paragraph 39 (as well as the allegations of Paragraphs 55 and 57) pursuant to Federal Rule of Evidence 408, which provides limited protections to statements made during settlement discussions.  But, as explained more fully in IMS Health's Memorandum of Law In Opposition to Symphony's Motion to Strike, which is being filed this same date, Rule 408 is not a shield to hide false or fraudulent statements.  See Fed. R. Evid. 408, Advisory Committee Note (2006 Amendment); Potenza v. City of New York DOT, No. 03 CV 2430, 2008 U.S. Dist. LEXIS 8793, at *4 (E.D.N.Y. Feb. 6, 2008).  Moreover, Rule 408 does not apply to pleadings.  Steak Umm Co., LLC v. Steak 'Em Up, Inc., No. 09-2857, 2009 U.S. Dist. LEXIS 101357, at *7 (E.D. Pa. Oct. 30, 2009).  Nor does it protect otherwise discoverable facts.  Fed. R. Evid. 408 Advisory Committee Note (2006 Amendment) ("the Rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations").

Symphony refused this reasonable request and, instead, confirmed that Stevens was going to work on developing Symphony's de-identification technology.  Id. at ¶ 39.

2.      **Symphony Continues Its Scheme With A Focus On Reconstructing IMS Health's De-Identification/EMR Team.**

Having placed Stevens at the helm of de-identification projects, Symphony then furthered its scheme by encouraging Stevens to solicit other IMS Health employees, many with knowledge of IMS Health's de-identification and EMR technology, in violation of the non-solicit covenant Stevens had executed with IMS Health.  In August 2013, two of Stevens' direct reports – Eugene Fievitz and Jason Schlesinger – left IMS Health to work for Symphony.[4]  With these hires, Symphony effectively  rebuilt a miniature version of the IMS Health de-identification/EMR team.  Id. at ¶ 40-42.  Its purpose was clear:  steal IMS Health's superior technology, thus avoiding the costs and risks of innovation and devaluing the investment IMS Health had made.  Fievitz was Senior Manager, Enterprise Data Assessment, Analysis & Integration in IMS Health's Global Technology Services & Operations Department.  Id. at ¶ 68. Schlesinger was Senior Manager, Business Analytics in IMS Health's Global Technology Services & Operations Department.  Id. at 69.  Like Stevens, Fievitz and Schlesinger had extensive knowledge of IMS Health's trade secrets and confidential information.  Both Fievitz and Schlesinger held lead roles in the acquisition process of EMR and other data and had deep

---

[4] Symphony and Stevens also targeted Patrick Stewart, IMS Health's Senior Manager of Advanced Analytics.  Stewart was deeply involved in predictive analytics, which analyze complex data sets to inform pharmaceutical companies on how best to market their products.  ACC ¶ 45-46.  Stewart had significant knowledge of IMS Health's trade secrets and confidential information, particularly given his work in developing algorithms for certain projection methodologies.  Id. at ¶¶ 46-47.  When Stewart resigned, he followed the Symphony/Stevens playbook:  he refused to provide any details about his employment plans, except to falsely represent that he was not going to a competitor.  ACC ¶¶ 48-50.

knowledge of the EMR data provision process – an automated process developed by IMS Health that sets IMS Health's capabilities apart from its competitors.[5] Id. at 70-72.

In addition, Symphony hired a vendor to assist with building its de-identification engine.  True to form, it hired the same vendor that has long worked on IMS Health's de-identification technology (dating back to the early 2000s when it was initially hired by SDI Health) and, through this partnership, has a longstanding relationship with Stevens (the "De-Identification Vendor").  Id. at ¶¶ 99-101.  Stevens secured the same team of individuals at the De-Identification Vendor that work on IMS Health projects to work with Symphony.  Id. at ¶¶ 105-106.

Keenly aware of the value of its confidential and proprietary information, like the de-identification and EMR technologies that are crucial to certain products, IMS Health takes significant measures to protect the confidentiality of its information.  For example, IMS Health requires certain employees – those with access to sensitive information – to enter into agreements that prohibit disclosing IMS Health's confidential and proprietary information and from competing with IMS Health and/or soliciting IMS Health employees and customers for a limited period of time to protect against the risk of misappropriation.  ACC ¶¶ 109-112.  Stevens, Stewart, Feivitz, and Schlesinger all had executed these agreements.  Id. at ¶¶ 32-33, 76-77, 79-82.  IMS Health imposes stringent confidentiality obligations on its vendors too.  Id. at ¶ 113.  The De-Identification Vendor was under agreements requiring that it maintain the confidentiality of IMS Health's information.  Id. at ¶¶ 103-104, 113.  But Symphony gave no regard to obligations of the employees it poached or the De-Identification Vendor it hired.  To the

---

[5] Fievitz and Schlesinger were originally hired by SDI Health:  Fievitz in 2004 and Schlesinger in 2000. They joined IMS Health when it acquired SDI Health in 2011.

contrary, Symphony intended for – and actually caused – these obligations to be breached. Worse yet, it tried to hide its bad acts through lies and deception.

Like Stevens and Stewart before them, Fievitz and Schlesinger refused to provide any information about their new employer.  ACC ¶ 74.  Unable to trust that its information would be protected, particularly in light of the situation with Stevens, IMS Health filed suit against Fievitz and Schlesinger, seeking to enforce the covenants of their employment agreements.[6]  Only then did Symphony acknowledge that it had hired Fievitz and Schlesinger and planned to place them in positions similar to those they held at IMS Health.  Id. at ¶¶ 97-98.

### 3.    Symphony Continues To Execute Its Scheme, Undeterred By This Litigation.

In addition to those employees already discussed, Symphony also recruited Gregory Hess and Eileen Fonseca from IMS Health.  Hess was the Chief Medical Officer of SDI Health and, post-acquisition, became the Regional Head, Health Economic Outcomes Research at IMS Health.  ACC ¶ 54.  Hess resigned from IMS Health on April 30, 2013.  Violating the non-solicit provision of his employment agreement, Hess recruited Fonseca, who was IMS Health's Project Director of Health Economic Outcome Research and a direct report to Hess, to follow him.  Id. at ¶¶ 60-62, 65.  In their positions at IMS Health, Hess and Fonseca both had extensive knowledge of IMS Health's trade secrets and confidential information, including the de-identification algorithm and data sample and panel designs.  Id. at ¶¶ 54, 63.  Both Hess and Fonseca also engaged directly with IMS Health clients.  Thus, in addition to concerns about disclosure of confidential information, their departures also raised concerns about improper solicitation of IMS Health clients in violation of post-employment non-solicitation covenants.

---

[6] IMS Health did not name Symphony as a defendant in those lawsuits and it did not allege tortious interference.  ACC ¶¶ 94-96.

Again, Symphony attempted to cover up its wrongful conduct in connection with hiring these IMS Health employees. Hess refused to identify Symphony as his new employer. When asked if he was going to a competitor, Hess lied and said he was going to work in another industry entirely – consumer finance analytics. ACC ¶¶ 52-53. When IMS Health learned the truth, it approached Symphony and sought assurances that Symphony and Hess would honor the covenants in Hess's employment agreement, including non-competition and non-solicitation obligations as well as prohibitions on using and/or disclosing IMS Health's confidential information/trade secrets. Id. at ¶ 55. IMS Health made the approach in a good faith effort to amicably head off potential disputes. To that end, IMS health offered a list of pharmaceutical clients with which Hess had worked and which raised particular concerns for IMS Health. Intent on advancing its scheme, Symphony knowingly provided false assurances. Symphony dismissed IMS Health's concerns that Hess would use and/or disclose confidential information and solicit IMS Health clients. It affirmatively represented to IMS Health that Hess would not be working with pharmaceutical clients as he had at IMS Health. Id. at ¶¶ 56-58. IMS Health now knows that promise was patently false.

The egregiousness of Symphony's misrepresentation came to light only recently. IMS Health learned that, around the time Symphony filed its first motion to dismiss in this case, Hess actively solicited large pharmaceutical clients of IMS Health to leave IMS Health for Symphony; these were companies on the very list that IMS Health had presented to Symphony. IMS Health also learned that Hess made a presentation at an industry conference with an IMS Health pharmaceutical client on October 21, 2013. In that presentation, Hess presented materials prepared by IMS Health and palmed them off as his and/or Symphony's work. Id. at ¶¶ 58-59. These events prompted IMS Health to amend its counterclaims.

C.     **IMS Health Asserts Amended Counterclaims.**

As summarized above, Symphony has engaged in a scheme to obtain IMS

Health's trade secrets and confidential information by targeting key IMS Health employees (and

a vendor) and putting them in positions that will inevitably lead to the use and/or disclosure of

protected information.  This scheme has unfairly advantaged Symphony and, at the same time,

devalued IMS Health's proprietary information and technology.  Accordingly, IMS Health seeks

redress through nine Amended Counterclaims:  misappropriation of trade secrets (Count I);

improper procurement of confidential information (Count II); tortious interference with

contractual relations (Counts III-VIII); and unfair competition (Count IX).

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  It does not

resolve disputed facts or decide the merits of the case.  See Grier v. Klem, 591 F.3d 672, 676 (3d

Cir. 2010) (The court does "not inquire whether a plaintiff will ultimately prevail when

considering a motion to dismiss, only whether the plaintiff is entitled to offer evidence to support

his or her claims.").  In reviewing the sufficiency of a complaint under Rule 12(b)(6), a court

must "accept all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief."  Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012)

(quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

The Federal Rules of Civil Procedure require "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this burden,

a complaint must contain factual allegations that, taken as a whole, render the plaintiff's

entitlement to relief plausible.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009).  This bar is not a high one:  it "'does not impose a probability

requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).  A motion to dismiss should be denied where the factual allegations in the complaint "raise the right to relief above the speculative level." See Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474, 483 (E.D. Pa. 2009) (quoting Phillips, 515 F.3d at 232 and Twombly, 550 U.S. at 555).  Here, IMS Health has more than met this burden.  Symphony's motion to dismiss should be denied in its entirety.

## III.    ARGUMENT

### A.    This Court Has Jurisdiction Over The Amended Counterclaims.

Symphony now makes a half-hearted argument that this Court does not have jurisdiction over two of the Amended Counterclaims asserted by IMS Health – misappropriation of trade secrets (Count I) and improper procurement of confidential information (Count II) – because they are not sufficiently related to Symphony's claims.[7]  That argument is baseless.  It is Symphony that put the nature of competition between these companies at issue.  Symphony's lawsuit alleges that IMS Health has achieved its success and precluded Symphony from gaining market share through anticompetitive conduct in violation of federal antitrust law.  IMS Health's affirmative defenses and Amended Counterclaims tell the real story of the competitive dynamic between the parties:  IMS Health has invested and innovated, while Symphony has poached and pilfered.  Because the claims brought by Symphony, IMS Health's affirmative defenses, and IMS Health's Amended Counterclaims are all tied to the same nucleus of operative fact, this Court has supplemental jurisdiction over all of IMS Health's claims pursuant to 28 U.S.C. § 1367.

---

[7] Notably, Symphony did not make this argument in its first motion to dismiss.  IMS Health's Amended Counterclaims do not include any changes to the misappropriation or improper procurement claims.  Thus, there is nothing about the amendment that would give the argument some purported newfound legitimacy.

Section 1367 provides that, generally, a court may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   Courts equate § 1367's "case or controversy" language with the test announced in United Mine Workers v. Gibbs, 383 U.S. 715 (1966), a case describing the constitutional boundaries of pendent jurisdiction.  See, e.g., Cronin v. Citifinancial Servs., 352 Fed. App'x 630, 636 (3d Cir. 2009); HB Gen. Corp. v. Manchester Partners, 95 F.3d 1185, 1198 (3d Cir. 1996).  Thus, supplemental jurisdiction extends over a counterclaim where there is a "common nucleus of operative fact" and the claims would ordinarily be expected to be tried in one judicial proceeding.  Gibbs, 383 U.S. at 725.  A "common nucleus of operative fact" exists where claims "share significant factual elements" or "revolve around a central fact pattern."  HB Gen., 95 F.3d at 1198.[8]  As detailed in paragraphs 11-17 of the Amended Counterclaims (which Plaintiffs ignore), there can be no doubt that is the case here.  This case is centered around the competitive practices of Symphony and IMS Health.  Symphony contends that IMS Health has engaged in anticompetitive conduct in violation of the antitrust laws.  In its defense, IMS Health will show that it has earned its success through investment and innovation.  It will also show that Symphony's limited success is due to its own failures, and its own strategy of taking short-cuts, instead of investing in the painstaking work of innovation.  To present its defenses fully, IMS

_____

[8] The test for whether this Court has jurisdiction over IMS's counterclaims is not, as Symphony claims, whether the counterclaims are compulsory under Federal Rule of Civil Procedure 13.  In Abromavage v. United Mine Workers of Amer., 726 F.2d 972, 988-92 (3d Cir. 1984), the Third Circuit held that some counterclaims that do not arise from the same "transaction or occurrence" (i.e., permissive counterclaims) might nonetheless be part of a "common nucleus of operative facts," and "the determination that a counterclaim is permissive within the meaning of Rule 13 is not dispositive of the constitutional question whether there is federal jurisdiction over that counterclaim."  With the enactment of § 1367 in 1990, it became clear, even outside the Third Circuit, that supplemental jurisdiction exists over a permissive counterclaim that arises from a "common nucleus of operative facts."  See, e.g., Alpern v. Cavarocchi, No. 98-3105, 1999 U.S. Dist. LEXIS 5929, at **33-34 (E.D. Pa. Apr. 29, 1999); Walker v. THI of N.M. at Hobbs Ctr., 803 F. Supp. 2d 1287, 1301 (D.N.M. 2011) (collecting cases).

Health will necessarily need to show the real facts about how Symphony operates – the very facts that are alleged in the counterclaims.[9]

Where, as here, multiple claims are "offshoots of the same basic controversy between the parties, fairness and considerations of convenience and economy require that the counterclaimant be permitted to maintain his cause of action." Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961); cf. Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1118, 1139 (N.D. Cal. 2003) (counterclaims are ancillary when they are based on the same "transaction or occurrence" or common nucleus of operative facts as its affirmative defenses). In Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96 (3d Cir. 1988), the Third Circuit analyzed claims "aris[ing] out of a bitter and quite public personal feud" between two physicians, Nanavati and Sorensen. That feud spawned antitrust claims and a slander claim against Nanavati, which was based on Nanavati's statements that Sorensen was incompetent and responsible for the death of a woman under his care. Id. at 102-03. The Third Circuit rejected Nanavati's contention that the district court lacked jurisdiction over the slander claim. It held that "total congruity" is unnecessary to establish supplemental jurisdiction, and that the slander claim arose from the same "nucleus of operative fact" as the federal claims because "a critical background fact (the enmity between the two physicians) is common to all claims." Id. at 105.

Here, Symphony's competition with IMS Health, like the enmity between the two physicians in Nanavati, establishes a common "critical background fact" underlying both the claims and counterclaims. Without it, neither the claims nor the counterclaims would exist. Independence Tube Corp. v. Copperweld Corp., 74 F.R.D. 462 (N.D. Ill. 1977), is also on point. There, plaintiff alleged that defendants violated the antitrust laws by attempting to prevent it

---

[9]   See Phillip Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law § 3.04d (4th ed. 2011) ("Often the plaintiff's own shortcomings are a better explanation for its injury than any antitrust violation.").

from entering the steel tubing business.  Id. at 464.  Defendants counterclaimed, alleging that

plaintiff had "been engaging in . . . unfair competition, unfair trade practices, and slander and

defamation."  Id.  The court reasoned that ancillary jurisdiction existed because

> the plaintiff alleges the defendants were attempting to prevent its entry
> into the structural steel tubing market.  The defendant's counterclaim
> responds that such entry was being conducted in a manner which violated
> its rights.  The complaint challenges actions motivated by plaintiff's entry
> into the market; the counterclaim challenges that action of entry.

Id. at 466.  So too here:  the complaint challenges actions allegedly motivated by Symphony's

existence as a competitor; the counterclaims challenge Symphony's manner of competing.  On

these facts, jurisdiction over the counterclaims is clearly present.

### B.   IMS Health Has Pled Actionable Claims For Tortious Interference With Contractual Relations.

As detailed above, Symphony lured away five IMS Health employees – Stevens,

Stewart, Fievitz, Schlesinger, and Hess[10]– for the improper purpose of learning and using IMS

Health's trade secrets and/or confidential information to the benefit of Symphony and to the

detriment of IMS Health.  Symphony has hired and retained them with knowledge of their

continuing obligations to IMS Health and has caused all five of the employees to breach those

obligations by engaging in conduct expressly prohibited by their employment agreements.  That

conduct includes soliciting IMS Health employees and clients and disclosing and using IMS

Health's confidential information.  Symphony has rebuffed IMS Health's good faith efforts to

address concerns regarding its former employees now working for a competitor, offering (or

causing the employees to offer) evasive answers or flat out lies regarding the employees' job

duties at Symphony.  In addition to the employees, Symphony retained a vendor long used by

---

[10] Symphony also very recently hired Eileen Fonseca.  IMS Health has not alleged a tortious interference claim with respect to Fonseca, but reserves the right to do so if the facts develop that would support that claim.

IMS Health to develop de-identification technology.  Symphony has engaged the De-Identification Vendor in a manner where Symphony will have access to IMS Health's trade secrets and/or confidential information in violation of the De-Identification Vendor's contracts with IMS Health.  These allegations fully support IMS Health's six claims of tortious interference with contractual relations – one for each employee (Counts III-VII) and the De-Identification Vendor (Count VIII).

Despite the ample allegations of Symphony's wrongful conduct, Symphony asserts that all six tortious interference claims should be dismissed because (1) its actions are shielded by the Competitor's Privilege and (2) IMS Health has failed to allege harm or damage resulting from Symphony's actions with respect to the De-Identification Vendor.  Both arguments fail.  As explained below, the Competitor's Privilege does not permit a competitor to interfere with *existing restrictive covenants*.  In addition, it does not apply where "wrongful means" are used to interfere with the contracts.  Moreover, IMS Health has adequately alleged harm and damage resulting from Symphony's interference with its vendor relationship.

**1.      Symphony Cannot Use The Shield Of The Competitor's Privilege Because Symphony Employed Wrongful Means To Interfere With Existing Restrictive Covenants.**

Symphony asks this Court to dismiss all six tortious interference claims asserted by IMS Health (Counts III-VIII), asserting that the alleged conduct is protected by the Competitor's Privilege, which protects a competitor from liability for a tortious interference claim in certain circumstances.  See BP Envtl. Servs., Inc. v. Republic Servs. Inc., No. 12-4103, 2013 U.S. Dist. LEXIS 71536, at *11 (E.D. Pa. May 21, 2013).  But the shield of the Competitor's Privilege is not available to Symphony, which has targeted key IMS Health employees with particularized knowledge of IMS Health's proprietary information for the purpose of learning and using that information, for two reasons.

-14-

First, the Competitor's Privilege applies only to employee contracts that are fully terminable at will.  It does not protect Symphony's interference with ongoing restrictive employment covenants, which govern all of the former IMS Health employees at issue here. Pennsylvania has adopted Section 768 of the Restatement (Second) of Torts ("Section 768"), which articulates the Competitor's Privilege, and provides:

> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract **terminable at will** does not interfere improperly with the other's relation if

> (a) the relation concerns a matter involved in the competition between the actor and the other and

> (b) the actor does not employ wrongful means and

> (c) his action does not create or continue an unlawful restraint of trade and

> (d) his purpose is at least in part to advance his interest in competing with the other.

> (2) **The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.**

Restatement (Second) of Torts § 768 (emphasis added).

Symphony argues that the law permits competition for at will employees, but it has overlooked the fact that the privilege does not permit interference with restrictive covenants that are not terminable at will.  Section 768(2), together with the official commentary, makes clear that employment contracts that contain restrictive covenants are at most "partially" terminable at-will, and that a competitor is *not* privileged to induce a competitor's employees to break their restrictive covenants.  See Restatement (Second) of Torts Section 768, cmt. (i) ("An employment contract, however, may be only partially terminable at will.  Thus it may leave the employment at the employee's option but provide that he is under a continuing obligation not to

-15-

engage in competition with his former employer.  Under these circumstances a defendant engaged in the same business might induce the employee to quit his job, *but he would not be justified in engaging the employee to work for him in an activity that would mean violation of the contract not to compete*.") (emphasis added).  Indeed, this distinction was specifically explained in a case cited by Symphony:

> Appellants cite our holding in *Hennessy v. Santiago,* 708 A.2d 1269 (Pa. Super. 1998), for the proposition that, because Appellant Kline, Fink and Ulrich were "at-will employees," Appellants cannot be liable for interference with their covenants-not-to-compete with WAGO, and, therefore, damages cannot be measured from the departure of Appellant Kline, Fink and Ulrich from WAGO. This argument misstates the law.  In *Hennessy,* we held that an at-will employee may not sue a third-party for tortious interference with a presently-existing at-will employment contract. *Hennessy,* 708 A.2d at 1278. ***Interference with a covenant-not-to-compete, on the other hand, is actionable in tort, despite an employee's "at-will employment" status***. *See, e.g., Judge Tech. Servs. v. Clancy,* 202 PA Super 391, 813 A.2d 879 (Pa. Super. 2002) (new employer sued for tortious interference with covenants-not-to-compete).

Reading Radio, Inc. v. Fink, 833 A.2d 199, 209 (Pa. Super. Ct. 2003).

Here, Symphony targeted IMS Health employees who are subject to *ongoing* restrictive covenants because they had uniquely sensitive access to IMS Health's trade secrets and confidential information.  This situation is expressly excepted by subsection (2) of Section 768 and is, thus, not protected by any privilege.

Second, Symphony's conduct is not protected by the Competitor's Privilege for the additional reason that Symphony used "wrongful means."  See Restatement (Second) of Torts § 768(1)(b).  The Supreme Court of Pennsylvania has yet to define "wrongful means," but federal courts applying Pennsylvania law employ the "independently actionable test."  See Assembly Tech. Inc. v. Samsung Techwin Co., Ltd., 695 F. Supp. 2d 168, 176-78 (E.D. Pa. 2010).  That is, conduct is "wrongful" if, in and of itself, the conduct would give rise to a cause of action.  See e.g., Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 220 (3d Cir.

-16-

2009) (noting that the Competitor Privilege does not shield "independently actionable conduct").[11]

        Here, IMS Health alleges that Symphony has engaged in a scheme to steal IMS Health's valuable trade secrets and confidential information, including inducing former IMS Health employees to violate their employment agreements and then lying about it.  Stealing confidential information and then covering one's tracks with fraudulent misrepresentations easily meets the standard for "wrongful."  See Assembly Tech. Inc. v. Samsung Techwin Co., Ltd., No. 09-798, 2009 U.S. Dist. LEXIS 106934, at *20 (E.D. Pa. Nov. 16, 2009) (citing Restatement (Second) of Torts § 768) ("Wrongful means include . . 'fraud' . . . as well as 'independently actionable conduct'."); see also, Pierre & Carlo, Inc. v. Premier Salons, Inc., 713 F. Supp. 2d 471 (E.D. Pa. 2010) (finding no privilege for hiring competitor's employees when the intent in hiring them was to acquire confidential customer information and stating "[a]lthough business are generally justified in hiring a competitor's employees, they are prohibited from doing so when the inducement is made for wrongful purposes").

        In an attempt to avoid this conclusion, Symphony distorts the case law.  Citing a single, isolated sentence in the Reading Radio opinion, Symphony argues that its hiring of IMS's "at-will employee[s] is not actionable in and of itself."  Symphony Memo at 16.  Notably, Symphony omits the next two crucial sentences from Reading Radio that defeat its entire argument.  While "[o]ffering employment to another company's at-will employee is not actionable in and of itself[,] . . . systematically inducing employees to leave their present employment is actionable when the purpose of such enticement is to cripple and destroy an

---

[11] At least one Pennsylvania state court has applied a more liberal standard.  See Sciortino v. Johnson, No. 04-6158, 2007 Pa. Dist. & Cnty. Dec. LEXIS 185 (Pa. Com. Pl. May 21, 2007) ("[T]here is no requirement in this Commonwealth that acts that tortiously interfere with contractual relations be actionable in themselves, rather, the acts must simply be wrongful.").

integral part of a competitive business organization rather than to obtain the services of particularly gifted or skilled employees.  Further, *when the inducement is made for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets or enticing away his customers, the injured employer is entitled to protection*."  <u>Reading Radio</u>, 833 A.2d at 212 (emphasis added and internal quotation marks and citations omitted).

This is exactly the type of behavior in which Symphony has engaged.  As alleged in the Counterclaims, Symphony "systematically induc[ed] [IMS] employees . . . for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets [and] enticing away [its] customers."  <u>Id.</u>; <u>see</u> ACC ¶¶ 135; 140; 146; 151; 156; 162 (alleging "Symphony has [interfered with contractual relations] *for the purpose of* wrongfully obtaining and exploiting IMS Health's trade secrets and confidential information" and "wrongfully stealing clients and employees from IMS Health") (emphasis added).)  As such, under the very case cited by Symphony, IMS Health has alleged conduct that is independently actionable, thereby rendering the Competitor's Privilege inapplicable for this reason as well.[12]

### 2. Symphony Has Improperly Interfered With IMS Health's Relationship with the De-Identification Vendor and has Caused IMS Health Injury.

Symphony contends that Amended Counterclaim VIII, which alleges tortious interference with IMS Health's agreement with the De-Identification Vendor, should be dismissed because IMS Health has not alleged that it has been harmed or suffered "actual legal

---

[12] Symphony's reliance on <u>Assembly Tech. Inc.</u>, 2009 U.S. Dist. LEXIS 106934, and <u>Zimmer Spine, Inc. v. EBI, LLC</u>, No. 10-3112, 2011 U.S. Dist. LEXIS 103629 (D. Colo. Sept. 14, 2011), does not advance its cause.  IMS Health alleges that Symphony engaged in a pattern of deception and induced multiple breaches of the employment agreements for the purpose of obtaining access to IMS Health's proprietary and confidential information.  <u>Assembly Tech</u> does not include any allegations that defendants induced former employees to commit wrongs, such as disclosing trade secrets.  The <u>Zimmer Spine</u> case, a Colorado District Court opinion, dismissed the tortious interference claim primarily because the plaintiff did not have a contractual relationship with the employees at issue. Moreover, <u>Zimmer</u> did not involve a deceptive scheme like the one alleged here.

damage" as a result of Symphony's conduct.  (Symphony Memo at 20-21.)  Symphony is mistaken.

In fact, IMS Health expressly alleges that Symphony interfered with the vendor agreement *in order to* "wrongfully obtain and exploit IMS Health's trade secrets and confidential information."  ACC ¶ 162.  Moreover, IMS Health alleges that, by creating the de-identification engine for Symphony, the De-Identification Vendor, which has over a decade of experience working with IMS Health's de-identification technology, will necessarily disclose IMS Health's trade secrets and confidential information in direct violation of its contractual obligations, which will devalue that information and unjustly enrich Symphony.[13]  Id. ¶¶ 161-163, 106-08.  As such, IMS Health has sufficiently alleged harm directly resulting from Symphony's interference with its vendor agreement.  See Assembly Tech., Inc. v. Samsung Techwin Co., 2009 U.S. Dist. LEXIS 106934, at *10 (E.D. Pa. Nov. 16, 2009) (quoting Restatement (Second) of Torts § 766 and holding that "purposeful action on the part of the defendant, specifically *intending to harm* the existing relation" is sufficient to state a claim).

IMS has also adequately alleged pecuniary loss flowing from Symphony's interference with the vendor agreement.  As alleged in the Counterclaims, IMS Health derives significant value from its trade secrets.  ACC ¶ 103.  That value is dependent upon maintaining their secrecy.  By putting the De-Identification Vendor in a position that will inevitably lead it to improperly use and disclose IMS Health's trade secrets and confidential information for the benefit of Symphony, thus decreasing their value, Symphony has caused pecuniary loss to IMS Health.  See generally Fishkin v. Susquehanna Partners, G.P., No. 03-3766, 2007 U.S. Dist. LEXIS 19621, **3-4 (E.D. Pa. Mar. 20, 2007) ("Pennsylvania law allows a plaintiff alleging

---

[13] Though a fair inference can be made that actual breach has occurred, IMS is not required to allege actual breach as Symphony contends.  See Kisano Trade & Invest Ltd. v. DEV Lemster, No. 11-852, 2011 U.S. Dist. LEXIS 133089, at **23-25 (W.D. Pa. Sept. 27, 2011).

misappropriation of trade secrets or conversion to measure its damages in two different ways, either by the measurable losses the plaintiff suffered from the misappropriation or by the profits or other benefits the defendant gained."); Rohm and Haas Co. v. Adco Chem. Co., 689 F.2d 424, 433-34 (3d Cir. 1982) ("Pennsylvania permit[s] the recovery of defendants' profits or plaintiff's damages resulting from defendants' wrongs.").

### C. IMS Health Has Pled Claims For Improper Procurement Of Confidential Information And Unfair Competition.

Symphony argues that, "Because . . . IMS fails to state a claim for tortious interference, its improper procurement and unfair competition claims—regurgitations of the tortious interference claims—must also fail." Symphony Memo at 22. Symphony is wrong. As explained above, IMS Health has stated viable claims of tortious interference. Moreover, improper procurement and unfair competition are standalone torts with separate and distinct elements, and IMS Health has adequately pled them both.

### 1. IMS Health Has Pled A Claim For Improper Procurement of Confidential Information.

Improper procurement of confidential information is a separate and distinct tort under Pennsylvania law. See Den-Tal-EZ, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1231 (Pa. Super. Ct. 1989) (holding improper procurement of confidential information is a "separately actionable" tort). The elements of the tort are (1) using improper means to procure (2) non-public information about another's business (3) for the purpose of advancing a rival business interest, (4) resulting in injury caused by possession, use or disclosure of the information. Id. IMS Health has pleaded each of these elements, detailing Symphony's poaching of key IMS Health employees and inducing them and IMS Health's De-Identification Vendor to disclose proprietary information, see, e.g., ACC ¶¶ 27-30, 41-43, 99-106, 126-127, the importance and confidential nature of IMS's De-Identification and other technology and information, see, e.g.

ACC ¶¶ 26, 68-73, 109-113, 117, Symphony's purpose of using the confidential information to compete with IMS, see e.g. ACC ¶¶ 23-24, 39, 91, 105-106, 128, and the resulting injury caused by the disclosure, see e.g. ACC ¶¶ 99, 107-108, 122-123, 129-130.

Pennsylvania courts generally look to the comments of the Restatement of Torts § 759 for further explanation of the elements of improper procurement of confidential information.  See, e.g., Pestco, Inc. v. Associated Prods., Inc., 880 A.2d 700, 709 (Pa. Super. Ct. 2005).  Comment c provides that "inducing employees or others to reveal the information in breach of a duty" is one manner of improper means in a non-exclusive list.  Comment c to Restatement of Torts § 759.  This is precisely the conduct that IMS Health has alleged.[14]

## 2.    IMS Health Has Pled A Claim Of Unfair Competition.

Unfair competition includes any conduct "which is contrary to honest, industrial and commercial practices . . . [and] provides the legal basis for business competitors to insist on fair play in the market in which they are involved."  Lakeview Ambulance and Med. Servs., Inc. v. Gold Cross Ambulance and Med. Serv., Inc., No. 1994-2166, 1995 Pa. Dist. & Cnty. Dec. LEXIS 279, at **3-4 (Pa. Ct. Com. Pl. Oct. 19, 1995); see also Restatement (Third) of Unfair Competition § 1 cmt. (g) (prohibiting acts (whether actionable as a separate tort or not)[15] that are "likely to interfere in a substantial manner with the ability of prospective purchasers to choose on the merits of the competing products" and stating that "divert[ing] business from another by

---

[14] The element of "improper means" in this context is a broad concept based upon "accepted social policy." See Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co., No. 09-236, 2009 U.S. Dist. LEXIS 113209, at *25 (W.D. Pa. Dec. 4, 2009) ("[E]ven if there had been no contracts between the parties, under accepted social policy, Defendants had no right to . . . divert confidential information.").  It is not, as Symphony contends, identical to "wrongful means" required to overcome the competitors privilege.  Symphony improperly conflates these concepts without providing any legal support.

[15] See Restatement (Third) of Unfair Competition § 1 & cmt. (g) ("[l]iability for unfair competition . . . is not limited to conduct that is otherwise tortious with respect to the party seeking relief . . . "); ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d 622, 688 (E.D. Pa. 2003) ("[T]he tort of unfair competition includes those forms and methods of competition which . . . while not unlawful under current law, have been determined to be unfair.").

means of fraudulent misrepresentations or through the wrongful use of confidential information"

may in some circumstances support an unfair competition claim).

In contrast to Symphony's abridged rendition of IMS Health's unfair competition

claim—which selectively quotes short phrases from four paragraphs of IMS Health's

counterclaims—IMS Health has alleged that Symphony engaged in a host of dishonest and

anticompetitive methods of competition, which collectively support a stand-alone claim for

unfair competition.  (see, e.g., ACC ¶¶ 165-75).

For example, IMS Health alleges that Symphony engaged in a campaign to gain

access to IMS Health's trade secret and confidential de-identification technology by inducing

De-Identification Vendor to reveal information about that technology.  (Id. ¶¶ 99-108, 171).

IMS Health alleges Symphony furthered this anticompetitive scheme by hiring employees with

knowledge of IMS Health's proprietary, trade secret, and confidential information; instructing

the employees to lie to IMS Health about their future employment plans; placing the employees

in positions where they would inevitably disclose the information; refusing to advise IMS Health

about the roles of certain of the employees; and lying about those roles.  (Id. ¶¶ 29, 30, 42, 49-50,

53, 57-58, 92, 96, 166-67, 171).  And, IMS Health alleges Symphony engaged in this

anticompetitive campaign not only to steal IMS Health's trade secrets and confidential

information for use in Symphony's products (Id. ¶ 168), but also to palm IMS Health's work

product off as its own (Id. ¶¶ 59, 169).  Indeed, the Amended Counterclaims allege Hess made a

presentation at an industry conference with an IMS Health client in which he presented IMS

Health materials as his own slides, passing them off as his own or Symphony's work.  (Id. ¶

59).[16]

_____

[16]  These allegations go far beyond a mere duplicate of IMS's tortious interference claims, as claimed by
Symphony, see Symphony Memo at 22, and are far from an unfair competition claim that "rests entirely on the

Hill v. Best Medical International, Inc., No. 01-1709,  2011 U.S. Dist. LEXIS

123845 (W.D. Pa. Oct. 24, 2011), a case relied on by Symphony, actually supports this position.

In Hill, the court noted that, separate and apart from any independent tort, "systematic inducing

of employees to leave their present employment and take work with another" is a form of unfair

competition "when the inducement is made for the purpose of having the employees commit

wrongs, such as disclosing their former employer's trade secrets or enticing away its customers."

Id. at **60-61.  Although it granted summary judgment on the unfair competition claim for lack

of evidence, the court specifically stated that if the defendant had "systematically induced"

employees to leave their employer "to gain an unfair market advantage" that would constitute

unfair competition.  Id. at *60.  Hill relied on Morgan's Home Equip. Corp. v. Martucci, which

held the defendant was liable where he systematically enticed plaintiff's door-to-door salesmen

for the purpose of disrupting plaintiff's business and obtaining confidential customer lists.  136

A.2d 838, 847-48 (Pa. 1957).

Here, Symphony has systematically induced IMS Health's employees to leave

IMS Health for the purpose of inducing those employees to disclose IMS Health's proprietary

information and, ultimately, to entice away its customers and freeload off of IMS Health's

investments.  (ACC ¶¶ 166, 168).  Thus, IMS Health has adequately pled a claim for unfair

competition.

**D.     The Fievitz And Schlesinger Claims Are Not Barred By Res Judicata.**

Symphony contends that all claims involving allegations about Fievitz and

Schlesinger must be dismissed on the basis of res judicata.  Those claims include the tortious

interference claims that are specific to their employment agreements (Counts V and VI), as well

---

misappropriation allegations," distinguishing this case from Eagle v. Morgan, No. 11-4303, 2013 U.S. Dist. LEXIS
34220, at *48 (E.D. Pa. Mar. 12, 2013).

as the misappropriation (Count I), improper procurement (Count II), and unfair competition (Count IX) claims to the extent they are related to Fievitz and Schlesinger (although they are much broader).  Symphony is once again wrong.

       As Symphony admits, res judicata does not bar all subsequent litigation that has some relationship to a resolved matter.  Rather, a party seeking to invoke res judicata must establish that the subsequent suit involves (1) "the same parties or their privies" and (2) must be "based on the same cause of action."  Marmon Coal Co. v. Eckman, 726 F.3d 387, 394 (3d Cir. 2013).  Here, neither of these elements is met.  The Fievitz Action was an employment lawsuit against only Fievitz and Schlesinger, brought by IMS Health in order to prevent them from violating their individual covenants not to compete.  Symphony was not a party to that action.[17]

       Additionally, tortious interference with contract and breach of contract are separate and distinct claims that should not bar each other under principles of res judicata.  The factual and legal issues are distinct.  IMS Health was not required to name Symphony as a defendant in the prior action, as Symphony was not a necessary party for the dispute.  Thus if res judicata were to apply here, the effect would be to impose an improper mandatory joinder of parties with regard to the prior action.  Moreover, the claims are different in the two cases.  The

---

[17] Symphony cites three cases for its assertion that it is in privity with Fievtiz and Schlesinger, none of which are applicable to the present case.  Contrary to Symphony's description of Jones v. Holvey, the court, applying New Jersey law, specifically stated that it was not deciding the issue of privity and, in fact, reversed the lower court's decision that plaintiff's claims were barred by the doctrine of res judicata.  29 F.3d 828, 830 (3d Cir. 1994) ("[W]e do not decide whether the second prong of res judicata has been met in this case . . .").  Further, the dicta discussion of privity was limited to a § 1983 claim in which officers and their departments were in privity for res judicata purposes because the claims against the departments were for the exact actions done through those officers.  Id. (citing Rodziewicz v. Beyer, 809 F. Supp. 1164, 1168 (D.N.J. 1992)).  Similarly, in Shellenberger v. UPS, the court found that the employees were in privity with their employer for res judicata purposes when the complained of actions were identical and carried out through those employees.  No. 05-2266, 2006 U.S. Dist. LEXIS 2636, at *5-8, *17-18 (E.D. Pa. Jan. 25, 2006).  In contrast, IMS Health has properly pled a series of unlawful and improper actions by Symphony itself, distinguishable from the individual actions of Fievitz and Schlesinger.  Symphony also cites Adefumi v. City of Philadelphia, but this case contains no discussion of employer-employee relationships, it only bears on privity between related public entities.  445 Fed. App'x 610, 610-11 (3d Cir. 1994).

counterclaims asserted here are based on a broad pattern of misconduct by Symphony encompassing more than just Messrs. Fievtiz and Schlesinger.  That broad pattern, challenged in tort claims such as unfair competition, was not at issue in the Fievitz Action.  For example, the Fievitz court would have had no basis to enjoin Symphony's overarching scheme and pattern of wrongdoing.

E.    **If The Court Finds Any Of The Counterclaims Insufficiently Pled, IMS Health Should Be Granted Leave To Amend.**

If this Court finds any of IMS Health's counterclaims to be insufficiently pled, IMS respectfully requests leave to amend.  Federal Rule of Civil Procedure 15(a)(2) permits a plaintiff to amend its complaint with leave of court, and "[t]he court should freely give leave when justice so requires." See Fed. R. Civ. P. 15(a)(2); see also Assembly Tech., Inc. v. Samsung Techwin Co., No. 09-00798, 2009 U.S. Dist. LEXIS 106934, at *21 (E.D. Pa. Nov. 16, 2009) (granting leave to file a second amended tortious interference claim where plaintiff failed to sufficiently allege that defendant's interference was not privileged).  "As this language suggests, '[a] liberal policy toward allowing amendment to correct errors in the pleadings clearly is desirable and furthers one of the basic objectives of the federal rules—the determination of cases on their merits.'" Schomburg v. Dow Jones & Co., 504 Fed. App'x 100, 103 (3d Cir. 2012) (quoting 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1474 (3d ed. 2008) and holding that the district court erred in refusing to allow plaintiff to file a second amended complaint).  Thus, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).  Here, allowing IMS Health to amend its counterclaims would be neither inequitable nor futile.

IV.    CONCLUSION

In its antitrust complaint, Symphony has challenged IMS Health's position in the marketplace, alleging that it was obtained through anticompetitive conduct, and further alleging that this conduct has precluded Symphony from growing.  But, the truth of the competitive dynamic between the parties is not the one-sided story of victimization told by Symphony.  Through its defenses and counterclaims, IMS Health has presented the real story:  IMS Health leads the industry because it has worked hard and made substantial investments, responding to and anticipating the needs of its clients.  Symphony, by contrast, has not.  Symphony has, instead, tried to build its business by, among other things, stealing the fruits of IMS Health's labor.  This wrongful conduct supports IMS Health's defenses and also gives rise to the nine amended counterclaims brought by IMS Health – claims that can, and should, be heard by this Court.  For all of the reasons set forth above, Symphony's motion to dismiss should be denied in its entirety.

Respectfully submitted,

/s/ Barak A. Bassman
Barbara W. Mather
Barbara T. Sicalides
Barak A. Bassman
Sara B. Richman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4000

Richard I. Werder
Stephen R. Neuwirth
Steig D. Olson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

-26-

51 Madison Avenue
New York, New York  10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel for IMS Health*

## <u>CERTIFICATE OF SERVICE</u>

I, Barak A. Bassman, hereby certify that on December 19, 2013, I caused a true and correct copy of the foregoing Memorandum of Law in Opposition to Symphony's Motion to Dismiss the Amended Counterclaims of IMS Health Incorporated to be served on the following counsel of record via hand delivery and ECF Transmission:

> Leslie E. John
> Jason A. Leckerman
> Marcel S. Pratt
> Ruth S. Uselton
> BALLARD SPAHR LLP
> 1735 Market Street
> 51st Floor
> Philadelphia, PA 19103

> */s/ Barak A. Bassman*