IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYMPHONY HEALTH SOLUTIONS CORPORATION, ET AL. | : : | CIVIL ACTION |
| Plaintiffs, | : : | No. 13-4290 |
| v. | : : | |
| IMS HEALTH INCORPORATED, | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**MCHUGH, J.**                                                                                                   **August 15, 2014**

Upon consideration of the plaintiffs' Motion to Dismiss the Defendant's Amended Counterclaims, defendant's response, the plaintiffs' reply, and the parties' oral argument, the court rules as follows:

1. Plaintiffs' motion to dismiss Counterclaim I, Misappropriation of Trade Secrets, is

    **GRANTED** as it relates to Fievitz and Schlesinger.

    *Res judicata* bars a party from refiling a suit "against the same adversary based on the same cause of action as a prior suit." *Marmon Coal Co. v. Director, Office of Workers' Compensation Programs*, 726 F.3d 387, 394 (3d Cir. 2013). A moving party must establish there was "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Id.* at 394. In this case, the Consent Order in *IMS v. Fievitz and Schlesinger*, No. 13-4768 (E.D. Pa. 2013) was a final order on the merits. *Interdynamics Inc. v. Firma Wolf*, 653 F.2d 93, 96-97 (3d Cir. 1991) ("[A] consent decree, although negotiated by the parties, is a judicial act. Such a decree possesses the same force with regard to res judicata … as a judgment entered after a trial on the merits."). I am

1

satisfied that the actions on which Symphony relies involved the same parties or their privies. *Fievitz* involved Symphony employees, Symphony itself was a party to that agreement, and the same counsel signed the agreement for Symphony and both employees. Both the *Fievitz* action and Counterclaim I alleged that Fievitz, Schlesinger, and through them Symphony, misappropriated IMS's trade secrets. Symphony's access to IMS trade secrets through Fievitz and Schlesinger was precisely the issue presented and the question resolved in the *Fievitz* action. The Court in that action retains jurisdiction over those claims by virtue of the Consent Order. Accordingly, those claims are properly barred.

In contrast, IMS's other counterclaims allege a wider campaign by Symphony to acquire IMS's confidential information, and as such cannot be considered *res judicata.*

Symphony also challenges the relatedness of this Counterclaim and Counterclaim II. This court may only take jurisdiction over counterclaims without an independent basis for subject matter jurisdiction if the counterclaims share a common nucleus of operative facts. *Ambromovage v. United Mine Workers of America*, 726 F.2d 972 (3d Cir. 1984). The Third Circuit explained that "mere tangential overlap of facts is insufficient, but total congruity between the operative facts of the two cases is unnecessary." *Nanavati v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988). In this case, the plaintiffs' complaint, while it focuses on antitrust claims against IMS, includes allegations that IMS has engaged in "misappropriation of trade secrets and predatory hiring of Symphony employees." Not every aspect of the parties' relationship would be appropriate to litigate in this action, but if Symphony wishes to make an issue of IMS's dealings with Symphony employees, IMS may do the same. Whether IMS is abusing market power or simply engaging in competition with Symphony is the

core of this dispute, and evidence that IMS and Symphony engage in similar conduct towards each other's employees may be relevant. Consequently, Counterclaim I and II are both sufficiently related to Symphony's claims for the court to exercise jurisdiction over them.

2. Plaintiffs' motion to dismiss Counterclaims III through VII concerning Tortious Interference with Contract, is **DENIED.**

I am not persuaded at the pleading stage that IMS has failed to state a claim for tortious interference with its relationships with its employees. Symphony is correct that Pennsylvania has adopted the competitor's privilege described in Restatement (Second) of Torts § 768. See, e.g. *Phillips v. Selig*, 959 A.2d 420, 431 (Pa. Super. Ct. 2008). However the competitor's privilege does not shield a company from tortious interference with an employee bound by a covenant not to compete. *Reading Radio Inc. v. Fink*, 833 A.2d 199, 209 (Pa. Super. Ct. 2003) (explaining that while "an at-will employee may not sue a third-party for tortious interference with a presently-existing at-will employment contract […] [i]nterference with a covenant not to compete […] is actionable in tort, despite an employee's 'at-will employment' status.") (citing *Hennessy v. Santiago*, 702 A.2d 1269, 1278 (Pa. Super. Ct. 1998)).

I am also not prepared to hold that IMS has failed to allege Symphony engaged in "wrongful means" in inducing IMS's employees to leave. Whether means are "wrongful" is a fact-intensive inquiry without clear legal definition. Comment (e) to Restatement (Second) of Torts § 768 (1979) suggests that "physical violence, fraud, civil suits and criminal prosecutions, are all wrongful in the situation covered by this Section" whereas "persuasion" and "limited economic pressure" are not. Pennsylvania state courts have not yet defined what "wrongful means" can be, but seemingly might accept conduct far less egregious than that listed in the

Restatement. For example, in *Phillips*, 959 A.2d at 433, the Superior Court suggested that "in some circumstances misrepresentations and/or rumor mongering by a competitor may constitute improper interference with contractual relations." The Third Circuit has predicted that Pennsylvania courts will require "wrongful means," and in doing so appeared to endorse a broad definition extending to conduct "sufficiently wrongful to be actionable by someone, even if not by the party claiming tortious interference." *CGB Occupational Therapy v. RHA Health Servs.*, 357 F.3d 375, 388-89 (3d Cir. 2004). Here, IMS has alleged that Symphony engaged in unfair competition based on a deliberate campaign to procure confidential information. Comment (g) of the Restatement (Third) of Unfair Competition (1995) suggests that "[a]n act or practice that is determined to be unfair under this Section also constitutes a 'wrongful means' of interference" with contractual relations. Whether Symphony has actually engaged in 'wrongful means' can mostly cogently be addressed following discovery. For present purposes, particularly given the uncertain state of the law, IMS has stated facts that could plausibly support such a finding.

3. Plaintiffs' Motion to Dismiss Counterclaim II, Improper Procurement of Confidential Information, and Count IX, Unfair Competition, is **DENIED.**

Improper procurement and unfair competition are distinct torts in Pennsylvania. Like a claim for tortious interference with contract, improper procurement requires a showing of improper means. *Pestco, Inc. v. Assoc. Products, Inc.*, 880 A.2d 700, 708-09 (Pa. Super. Ct. 2005) (citing to the Restatement (First) of Torts § 759 (1939)). As is the case with tortious interference, "improper means" is an elusive, fact-specific concept. In *Pestco*, a driver for two companies who gave confidential information about one company to the other created a basis for the claim. *Pestco*, 880 A.2d at 708. Comment (c) to the Restatement (First) of Torts § 759 lists

4

"theft, trespass, bribing or otherwise inducing employees or others to reveal the information in breach of duty, fraudulent misrepresentations, threats of harm by unlawful conduct, wire-tapping, procuring one's own employees or agents to become employees of the other for purposes of espionage, and so forth." Many of these "improper means" would be criminal acts, but "otherwise inducing employees" to reveal information might be accomplished by means that are less than criminal but in other ways wrongful, such as bonuses tied to illicit sharing of protected information. Given IMS' stated example of its former employee hired by Symphony making a public presentation with IMS materials, there is at least a basis for inquiry beyond the pleading stage.

IMS has also stated facts to support its unfair competition claim. As the Pennsylvania Superior Court explained in *Reading Radio,* when considering whether a company had unfairly competed by inducing sales representatives to change teams, "systematically inducing employees to leave their present employment is actionable 'when the purpose of such enticement is to cripple and destroy an integral part of a competitive business organization rather than to obtain the services of particularly gifted or skilled employees." *Reading Radio*, 833 A.2d at 212. IMS has alleged that Symphony targeted for hire groups of employees who worked in parts on IMS's business that Symphony wished to duplicate, with the purpose of appropriating IMS's trade secrets. This is enough to state a claim for unfair competition.

4. Plaintiffs' Motion to Dismiss Counterclaim VIII, Tortious Interference with the De-Identification Vendor, is **GRANTED**.

A claim for tortious interference requires that the plaintiff has suffered actual harm. *Reading Radio*, *supra*, 833 A.2d at 211 (articulating the elements of tortious interference with

5

contract, including "the occasioning of actual legal damage as a result of the defendant's conduct."). Here, IMS insists that it will "inevitably" suffer because of Symphony's relationship with the de-identification vendor. Predictions of future harm by itself does not suffice to show actual legal damage. Furthermore, I am not convinced that harm is, in fact, inevitable. When one vendor works with two customers, it is hardly inevitable that the vendor will always disclose one customer's secrets to the other.

5. In all other respects, plaintiffs' Motion to Dismiss is **DENIED.**

    /s/ Gerald Austin McHugh
United States District Court Judge

6